No. 27,136.

J. T. ADAMS et al., as THE LYNDON FARMERS UNION BANK, *Plaintiffs,* v. ROY L. BONE, as Bank Commissioner, *Defendant.*

SYLLABUS BY THE COURT.

BANKS AND BANKING—*Institution of Private Bank—Power to Withhold Certificate of Authority.* Institution of a private, unincorporated bank is permitted by the law of this state, and a certificate of authority to such a bank to do a general banking business may not be withheld because of determination by the bank commissioner, after careful investigation, that there is no public necessity for the bank in the community in which it desires to operate.

Original proceeding in mandamus. Opinion filed July 10, 1926. Writ allowed.

*A. M. Harvey* and *Randal C. Harvey,* both of Topeka, for the plaintiffs.

*Charles B. Griffith,* attorney-general, *A. B. Crum, A. K. Stavely,* both of Lyndon, and *Tinkham Veale,* of Topeka, for the defendant.

The opinion of the court was delivered by

BURCH, J.: The action is one of mandamus to compel the bank commissioner to issue a certificate of authority to the Lyndon Farmers Union Bank, a partnership composed of plaintiffs, to do business as a private bank.

Evidence has been taken from which the court concludes there is no need of another bank at Lyndon. The banks already in existence there furnish adequate banking facilities for the territory which they serve. From the standpoint of general banking welfare of the community, the establishment of another bank there would be economically unsound, and the bank commissioner is justified in refusing a certificate to plaintiffs, if his view of the law is correct. On the other hand, farmers in and about Lyndon desire to patronize a bank which is owned and operated by farmers. Plaintiffs are responding to that demand, and they are qualified to receive a certificate of authority to conduct a private bank, if their view of the law is correct. The parties agree that the business of banking is subject to regulation in the interest of public welfare. The question involved is whether the business is so regulated that private, unincorporated banks are prohibited.

Banks and Banking, 7 C. J. p. 479 n. 39.

The first general banking law was enacted in 1891. The two subjects of the act were organization and regulation of banks. As indicated in the opinion in the case of *Citizens Bank v. Needham*, 120 Kan. 523, 244 Pac. 7, regulation of the corporate form of business association was a matter of growth and development. Early conceptions were crude, but the legislature of 1891 visualized the advantages to the banking business of corporate organization. Therefore, on the side of organization, the statute took the form of an act for the incorporation of banks. It was, however, merely an enabling act. Private banking was as well established as corporate banking. There were 414 banks in the state; 165 of them, nearly forty per cent, were private banks, and no inference is derivable from any provision of the act or from the act as a whole that new banks were forbidden to open unless they were incorporated.

On the side of regulation, the office of bank commissioner was created, and the system of regulation which has been developed to its present efficiency was outlined. Two features of the system were examination by the bank commissioner and quarterly reports to him; and the condition of banks already in existence, including private banks, was a matter of primary concern. Banks already in existence were placed in the same position as banks newly organized under the provisions of the act relating to incorporation, and were obliged to apply for certificates of authority to do business. Section 5 of the act related to granting certificates of authority to do business to banks newly incorporated. The president or cashier was required to transmit to the bank commissioner a verified statement containing certain information. The bank commissioner was empowered, on receipt of the statement, to examine the bank as if it were already engaged in the banking business, and if satisfied that necessary requirements had been met, to grant a certificate of authority to do business. Section 18 prescribed the form of official statement of resources and liabilities to be made quarterly, and oftener if required. Section 17 dealt with the existing situation:

"It shall be unlawful for any individual, firm or corporation to transact a banking business, or to receive deposits, for a longer period than six months immediately after the passage and approval of this act, without having first transmitted to the bank commissioner a verified statement of the resources and liabilities of such individual, firm, or corporation; said statement shall be made in accordance with sections 5 and 18 of this act. The bank commissioner shall thereupon have power to examine into the condition and affairs of such bank, and shall within thirty days from the receipt of such statement make

such examination, and if such bank has in all respects complied with the pro-
visions of law applicable thereto, said commissioner shall issue to such in-
dividual, firm, or corporation, under his hand and seal, a certificate showing
the amount of capital paid in, and that the same is authorized to transact
a general banking business, as provided by this act. Any persons violating
the provisions of this section, either individually or as an interested party in
any association or corporation, shall be guilty of a misdemeanor, and on con-
viction thereof shall be fined in the sum not less than three hundred dollars
or more than one thousand dollars, or by imprisonment in the county jail not
less than thirty days or more than one year, or by both such fine and im-
prisonment." (Laws 1891, ch. 43, § 17.)

Reference was made to sections 5 and 18 to avoid repetition. Both
of those sections called for action by the bank's president or cashier.
Neither section could be complied with literally by a private banker
who did not have an agent called president or cashier, and it was
contemplated that both sections would be adapted in a manner to
accomplish the purposes of section 17.

Sections of the act besides section 17 applied specifically to private
banks, and section 35 read as follows:

"Any individual, firm or association who shall receive money on deposit,
whether on time certificates or subject to check, shall be considered as doing
a banking business, and shall be amenable to all the provisions of this act."
(Laws 1891, ch. 43, § 35.)

The law of 1891 was superseded by the banking act of 1897. At
that time there were 377 banks in the state, and 102 of them were
private banks. The general scheme of the new law was the same as
that of the old. Throughout the act private banks were fully rec-
ognized, and there was no suggestion anywhere in the statute that
in the future none but incorporated banks could be given certificates
of authority to do business. Banking was defined to include private
banking. Name and capital of private banks were regulated. The
word "state" could not be used in the name, and the words "private
bank" were required to be placed on all statements, advertisements,
and stationery. Lists of owners analogous to lists of stockholders
were required to be kept in the bank subject to inspection, and to
be filed with the bank commissioner, after the manner of incorpo-
rated banks. Provision was made for ownership by the bank in its
designated name of all property devoted to banking, for conserva-
tion of bank assets to discharge bank liabilities in preference to per-
sonal liabilities, and private bankers were forbidden to use bank
funds in private business. In certain provisions, the term bank
applied to private as well as incorporated banks. In others, private

banks and corporate banks, private owners and corporate directors, private managers, officers and agents, and corporate officers and agents, were placed in the same categories. Partners were subjected to the same liabilities as corporate officers, and private banks were otherwise recognized as integral parts of the state's banking system.

Private banks were authorized to incorporate, but were not required to do so. Like the act of 1891, the portion of the act of 1897 relating to incorporation of banks was an enabling act, which persons desiring to engage in banking were privileged to utilize, but were not obliged to utilize. Section 5 of the act of 1891, amended only in respect to amount of capital paid in, became section 5 of the act of 1897. Section 18 of the act of 1891, amended to permit the bank commissioner to prescribe forms for quarterly statements and in other particulars, became section 17 of the act of 1897. Section 17 of the act of 1891, copied above, became section 16 of the act of 1897, and read as follows:

"It shall be unlawful for any individual, firm or corporation to transact a banking business, or receive deposits, without having first transmitted to the bank commissioner a verified statement of the resources and liabilities of such individual, firm or corporation; said statement shall be made in accordance with sections 5 and 17 of this act. The bank commissioner shall thereupon have power to examine into the condition and affairs of such bank, and shall within thirty days from the receipt of such statement make such examination; and if such bank has in all respects complied with the provisions of law applicable thereto, said commissioner shall issue to such individual, firm or corporation, under his hand and seal, a certificate showing the amount of capital paid in and that the same is authorized to transact a general banking business, as provided by this act. And it shall be unlawful for any individual, firm or corporation to transact a banking business without having first received such certificate from the bank commissioner. Any person violating the provisions of this section, either individually or as an interested party in any association or corporation, shall be guilty of a misdemeanor, and, on conviction thereof, shall be fined in a sum not less than three hundred dollars nor more than one thousand dollars, or by imprisonment in the county jail not less than thirty days nor more than one year, or by both such fine and imprisonment." (Laws 1897, ch. 47, § 16.)

The six-months period fixed by section 17 of the act of 1891, in which then-existing banks were obliged to come under the banking law, became functionless as to such banks at the end of the period, the limitation was dropped from section 16 of the act of 1897, and that section had no future office to perform except with respect to new banks, including private banks. Reference to sections 5 and 17

served the same purpose as the reference in the act of 1891 to sections 5 and 18 of that act. The result is, institution of private, unincorporated banks was permitted by the act of 1897, which, so far as it relates to that subject, has not been expressly repealed, and has not been modified by any subsequent statute specifically amending the banking act.

The subsequent history of private banking is not fully disclosed by the evidence. Doubtless because of the manifest superiority of corporate form of management, private banks which desired to continue in business incorporated. Some nationalized. Some discontinued. Some new private banks were instituted, and there are now two private banks in the state, the Commercial Bank of Wichita, and the Bank of Severance. The subject of private banking continued, however, to be of sufficient importance to engage legislative attention. When the bank guaranty act was passed in 1909, its application was limited by the title and by the first section to incorporated banks, and section 8 provided as follows:

"Any private bank or national bank having the required capital and being otherwise qualified, may reorganize as a state bank, or any newly organized bank taking over the business of another bank, otherwise qualified, may immediately become a guaranteed bank by depositing bonds or money and paying its assessments and otherwise complying with the provisions of this act." (Laws 1909, ch. 61, § 8.)

In 1911 private banks were recognized by an amendment to the law of 1897, relating to the giving of preference to any depositor or creditor (Laws 1911, ch. 65, § 1; R. S. 9-142), and by an amendment to the bank guaranty law, which reads in part as follows:

"Each guaranteed bank, and each state or private bank not guaranteed by this act, shall keep a correct record of the interest rate and terms of each deposit on which it has paid or agreed to pay interest, and shall make a statement thereof under oath to the bank commissioner quarterly." (Laws 1911, ch. 61, § 2.)

At the special session of the legislature in 1898 the general corporation law was amended, and a charter board was created to pass on applications for charters and grant certificates of authority to form private corporations. The attorney-general, the secretary of state and the bank commissioner were designated members of the charter board. In 1907 the general corporation law was revised, and the following was enacted:

"The charter board shall make a careful investigation of each application,

and shall inquire especially with reference to the character of the business in which the proposed incorporation is to engage, and if the board shall determine that the business or undertaking is one for which a corporation may lawfully be formed, and that the applicants are acting in good faith, the application shall be granted, and a certificate setting forth that the application has been approved shall be indorsed upon the application and signed by the members of the charter board approving the same." (Laws 1907, ch. 140, § 10.)

In 1911 the following proviso was added to the section just quoted:

"*Provided,* That when the application is for a bank charter the charter board shall also make a careful examination as to the financial standing and character of the incorporators, also of the public necessity of the business in the community in which it is sought to establish the same, and shall determine whether the capital for which said company is sought to be capitalized is commensurate with the requirements of law, and if the board shall determine either of said questions unfavorably to said corporation, it shall refuse said charter." (Laws 1911, ch. 125, § 2; R. S. 17-403.)

Defendant contends this proviso, which became effective May 22, 1911, repealed by implication the banking law of 1897, so far as it pertained to formation of private banks, and thereafter no unincorporated bank could lawfully receive a certificate to do business.

The constitutionality of the 1911 proviso was promptly challenged in an action of mandamus in this court to compel the charter board to approve an application for a bank charter notwithstanding the board's findings against public necessity for the bank. In a decision rendered on October 7, 1911, the proviso was upheld, and a writ of mandamus was denied. (*Schaake v. Dolley,* 85 Kan. 598, 118 Pac. 80.) One of the contentions made against the law was that it deprived the applicants of privilege to engage in a lawful business. The court met the contention with what seemed at the time to be a valid response based on a survey of the pertinent statutes:

"Tested by the foregoing principles the act assailed is the product of a valid exercise of the police power. It does not prohibit persons from engaging in the business of banking. The plaintiffs may, if they choose to forego the advantages of corporate organization, open a private bank. The statute merely says that the establishment of banking corporations in a given community will not be permitted beyond the public necessity of the business in that community." (p. 606.)

The law was sustained on the ground that unrestricted competition between banks in a given community is detrimental to the public welfare, and may be suppressed. The applicants contended private

banks could be established without regard to public necessity for additional banking facilities, and consequently the statute did not tend to prevent undue competition. The premise of the contention was tacitly conceded, but the court said:

"Competition by banks holding charters under the corporation act is certainly forestalled, and doubtless in the judgment of the legislature serious danger from the opening of private banks throughout the state is not to be feared because they must operate under all the restrictions and handicaps of incorporated institutions without possessing any of the privileges and advantages which those institutions enjoy." (p. 610.)

The question whether new private banks were forbidden by the 1911 proviso was not the matter immediately in issue in *Schaake v. Dolley,* and the subject is not *stare decisis* because of the decision in that case. It became necessary to the decision, however, for the court to discuss the bearing of the proviso upon the status of private banking in the state of Kansas. The case was argued and the decision was rendered in the midst of the social and economic conditions which gave rise to the proviso. The court endeavored to apprehend the legislative intention with respect to the relation of the proviso to the banking law. The conclusion was, organization of private banks was not affected. The bank commissioner was a member of the charter board whose action was sustained and, as indicated above, the legislature which enacted the proviso passed two acts relating to private banking. The decision was rendered nearly fifteen years ago. Notwithstanding the decision was open sesame to establishment of private banks by incorporators to whom charters were denied, private banks did not become public nuisances, and they were not responsible for recent disasters in the banking business, attributed by the bank commissioner to "too many banks, too few bankers." Since the decision was rendered, bank commissioners have been transmitting reports to governors, governors have been transmitting messages to legislatures, legislatures have been meeting and adjourning, and the statute book is still barren of any act stating that private banking is forbidden in Kansas, or stating that either the charter board or the bank commissioner has authority to pass on the public necessity of a private bank in a community, as a prerequisite to issuing a certificate of authority to do business.

Repeal by implication is not to be lightly imputed. A statute is not to be regarded as repealed by implication from a later act, unless the later act is so incongruous with the earlier one that they

cannot be harmonized by fair interpretation and both cannot be given effect. In this instance there is no repugnancy between the proviso attached to the corporation act and the sections of the banking act relating to private banking. They concern different kinds of banks, those which are incorporated and those which are unincorporated, two classes of institutions which have run their individual courses side by side in separate channels throughout the entire period of the state's history.

Defendant contends that if the 1911 proviso did not repeal by implication sections of the banking act relating to private banking, the proviso should be construed in such a manner as to make it applicable to the institution of private banks. Plaintiffs are not applicants for a corporate charter, and are not required to obtain from the charter board permission to organize a corporation. The charter board has nothing to do with granting certificates authorizing private banks to transact business. The bank commissioner has no authority as bank commissioner to investigate the necessity in a community for an additional bank, corporate or private. The powers of the charter board and of the bank commissioner are those conferred upon them by law, and this court may not enlarge those powers.

Finally, the bank commissioner requests the court to deny the writ of mandamus by exercise of judicial discretion displayed in the interest of public welfare. In the case of *Schaake v. Dolley* the court endeavored to express its comprehension of the mischiefs which the legislature sought to remedy by the 1911 proviso. The remedy extended to check upon multiplication of incorporated banks only. Competition through installation of private banks was regarded by the legislature as negligible, or for some other reason was not regulated. The fact, if it be a fact, that conditions are now such that competition of private banks will become a public menace is ground for legislative action. For the court to deny the writ through exercise of discretion would be to give indirect sanction to exercise by the bank commissioner of power he does not possess, and thereby to regulate in a special case a business which the legislature, with its eyes open, has left unregulated.

In denying authority to the bank commissioner to refuse plaintiffs a certificate to transact a general banking business, the court has merely expressed its view of the law. The bank commissioner's

advocacy of a different view has been that of a public official acting conscientiously, and according to correct conceptions of duty, in discharging a grave responsibility.

The writ is allowed.

HARVEY, J., not sitting.